IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SUSAN ADAMS-SKILLINGS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>*Acting Commissioner of the*<br>*Social Security Administration*,<br><br>　　　　Defendant. | MEMORANDUM DECISION<br><br>Case No. 1:12-cv-00084-DBP<br><br>Magistrate Judge Dustin B. Pead |

## I.　INTRODUCTION

This matter is before the Court under 28 U.S.C. § 636(c).  (Docket No. 11.)  Plaintiff appeals the Social Security Commissioner's decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act").  After considering the parties' briefs, the administrative record, and the relevant law, the Court **AFFIRMS** the Commissioner's decision.

## II.　PROCEDURAL HISTORY

On June 30, 2009, Plaintiff protectively filed a Title II DIB and Title XVI SSI application. (Tr. 67.)  She alleged her disability began on January 1, 2004.  (*Id.*)  On December 14, 2009, her application was initially denied.  (*Id.* 37-38.)  On May 27, 2010, it was denied upon reconsideration.  (*Id.* 39-40.)  On September 10, 2010, Plaintiff received an administrative hearing before an administrative law judge ("ALJ").  On October 20, 2010, the ALJ found

Plaintiff was not disabled within the Act's meaning. (Tr. 19-36.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for appeal purposes. (*Id.* 5-7.) *See* 20 C.F.R. § 422.210(a). This appeal followed. (Dkt. No. 3.)

### III.     FACTUAL HISTORY

Plaintiff worked as a phlebotomist from 1999 until June 2009. (Tr. 128.) She claims she had to quit some job duties due to her medical ailments. (*Id.* 129-34.) At her 2010 administrative hearing, Plaintiff testified she experienced pain all over her body, but that her pain in 2004 "wasn't nearly as bad as what it is now." (*Id.* 626.) She could not remember why she chose January 1, 2004 as her onset date, and testified it might have been because her doctor told her that she could not work anymore. (*Id.*)

Plaintiff further testified that she "do[es] nothing but lay around the house . . . . sit in front of the TV day after day . . . ." (Tr. 628.) She estimated she could sit between ten to twenty minutes before she needed to move around, and that she could stand for about three minutes, using her cane. (*Id.* 629.) Yet, she displayed a normal gait in 2009, being able to tandem walk, and walk on her heels and toes. (*Id.* 360.) Although she had a walker, she refused to use it because she felt embarrassed. (*Id.* 631.) Plaintiff noted on her Adult Function Report that she prepares meals ("a lot of frozen food") four times a month; she does some household chores by "pick[ing] up stuff," and leaves the house one to two times a week for short trips to the store. (*Id.* 138-39.) She can drive a car and handle family finances. (*Id.* 139.)

Plaintiff has an extensive history of asthma and related symptoms, including shortness of breath, and chest pain. (*See e.g.*, Tr. 154-76, 178-207, 217.) Since 2002, Plaintiff has sought medical treatment for asthma, chest pains, seizures, stroke symptoms, depression, anxiety, degenerative joints, bodily pains, and kidney stones, among other ailments. (Dkt. No. 15 at 2-

13.)  She has been prescribed many different medications and other treatments to control her symptoms.

## IV.    STATEMENT OF RELEVANT LAW

### A.  Definition of Disability Under the Act

The Act states that an individual is disabled " only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  The disabling impairment must last, or be expected to last, for at least twelve consecutive months.  *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

### B.  Process for Determining Disability Under the Act

To determine whether a claimant is disabled, Social Security regulations set forth a five-step sequential evaluation process.  That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged disability period; (2) had a severe impairment; (3) had a condition that met or medically equaled a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4).

## V.    STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal standards were applied.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation omitted).  The Court may neither reweigh the evidence, nor substitute its

judgment for that of the ALJ. *Id*. Where the evidence as a whole can support either the agency's decision, or an award of benefits, the agency's decision must be affirmed. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## VI. DISCUSSION

The ALJ proceeded through all five steps of the sequential evaluation process, resulting in denial. (Tr. 24-36.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease; (2) degenerative joint disease; (3) morbid obesity; (4) asthma; (5) seizure disorder; (6) depressive disorder, NOS (not otherwise specified); (7) anxiety disorder, NOS; and (8) hypochondriasis. (*Id.* 24.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Appendix"). (*Id.* 25.)

At step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of sedentary work, with additional limitations. (Tr. 27-28.) At step five, the ALJ determined Plaintiff's skills were transferable to other occupations existing in the national economy, including the jobs of office addresser, food and beverage order clerk, and charge account clerk. (*Id.* 34-35.)

On appeal, Plaintiff argues the ALJ erred when he: (1) failed to find Plaintiff's scoliosis, fibromyalgia, and pleurisy to be severe impairments, and to consider their effects in combination with other severe impairments; (2) failed to consider Plaintiff's morbid obesity in determining whether her impairments or combination of impairments met a listed impairment, and in assessing her RFC; (3) failed to properly consider Plaintiff's pain in making his RFC assessment; and (4) found Plaintiff had the RFC to perform less than the full range of sedentary work and the jobs identified by the vocational expert. (Dkt. No. 15.)

In contrast, the Commissioner argues (Dkt. No. 16), and this Court agrees that the Commissioner's decision should be **AFFIRMED** where it is free from harmful legal error, and supported by substantial evidence.

### A. The ALJ did not err When he Failed to Find Pleurisy a Severe Impairment.  The ALJ Committed Harmless Error When he Failed to Find Plaintiff's Scoliosis and Fibromyalgia Severe Impairments

At step two, an ALJ must determine whether the claimant has an impairment or combination of impairments which significantly limits his or her ability to do basic work activities, called a "severe impairment." 20 C.F.R. § 404.1520(c).  A severe impairment determination requires a "de minimis" showing of impairment.  *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir.1997).  However, the claimant must show more than the mere presence of a condition or ailment.  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

Substantial evidence supports the ALJ's decision not to include pleurisy as a severe impairment where Plaintiff presented inconsistent evidence regarding pleurisy.  Plaintiff reported pleuritic type chest pains (Tr. 562) but no formal pleurisy diagnosis exists in the record.  In fact, x-rays taken in 2005, 2009, and 2010, as well as more than twenty medical reports, all demonstrate Plaintiff had a normal respiratory system, no pleurisy, and no other cardiopulmonary abnormalities.  (*Id.* 190, 196, 239, 242, 247, 256, 286, 293, 302, 327, 331, 346, 356, 360-61, 378, 381, 389, 401, 405, 435, 540, 575, 589-92.)

In contrast, the Court finds Plaintiff presented sufficient evidence that her scoliosis and fibromyalgia constituted severe impairments.  Both conditions appear consistently in Plaintiff's medical reports, and Dr. Barton noted them in his physical RFC Assessment.  (*See* Tr. 207, 232, 239, 242, 247, 252, 256, 328, 331, 335, 343, 376, 401, 405, 418, 561, 564, 566.)  As such, the ALJ erred when he failed to find scoliosis and fibromyalgia severe impairments at step two.

"Nevertheless any error here became harmless when the ALJ reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at step two, and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).  Indeed, even if the ALJ included scoliosis and fibromyalgia among Plaintiff's severe impairments, his conclusion at step three would not have changed.

The ALJ specifically analyzed Listing 1.04, disorders of the spine, within his step three analysis.  (Tr. 26.)   This analysis would have addressed a scoliosis impairment, if any, but the ALJ concluded "there is lacking evidence that the claimant meets all of the requisite type and severity of symptoms" required for Listing 1.04.  (*Id.*)

Similarly, substantial evidence supports a finding that Plaintiff's fibromyalgia failed to meet or equal any listed impairment.  *See* SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012) (instructing that fibromyalgia "cannot meet a listing in appendix 1 because [it] is not a listed impairment.").  The existence of myalgias, arthalgias, and fibromyalgia over the pertinent time period is inconsistent in Plaintiff's record.  Numerous medical reports never mention any myalgia-related musculoskeletal problems.  (Tr. 170, 187, 194, 242, 349, 384, 572, 608.)   Dr. Lewis Barton, in the Physical Residual Functional Capacity Assessment, noted that Plaintiff had "fibromyalgia, but [found] no discussion of tender points."  (*Id.* 418.)

## B. The ALJ Properly Considered Plaintiff's Morbid Obesity When Determining Whether Plaintiff's Impairments met Listed Impairment, and in Assessing Plaintiff's RFC

Plaintiff did not allege obesity as a condition that limited her ability to work.  (Tr. 122.)   Nevertheless, Plaintiff argues the ALJ failed to consider her morbid obesity in determining whether her impairments, or combination of impairments, met a listed impairment, and in

assessing her RFC.  (Dkt. No. 15 at 17.)  *See* SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002) (requiring adjudicators to consider obesity in disability determinations).

The Court finds substantial evidence supports the ALJ's determination that Plaintiff's morbid obesity failed to meet a listed impairment.   Notwithstanding Plaintiff's obesity, she continued working until 2009.  (Tr. 28.)  Plaintiff displayed a normal gait in 2009, reported driving to the store once or twice a week, "picking up stuff" around the house, and preparing meals about four times a month.  (*Id.* 138-39, 360.)  A doctor prescribed a walker to help her mobility, but she refused to use it because she felt embarrassed.  (*Id.* 631.)  Her doctor instructed her to follow an exercise program with walking, stretching, and proper diet, but she showed "poor control . . . ."  (*Id.* 328, 331.)

The Court also finds the ALJ properly considered Plaintiff's obesity when he determined Plaintiff's RFC.  In discussing Plaintiff's RFC, the ALJ specifically noted her weight, body mass index, and the National Institutes of Health guideline for determining obesity.  (Tr. 30.)  He found, and the record reflects, "no specific indication . . . that the claimant's weight interfered with her ability to perform work-related activities."  (*Id.*)

In an abundance of caution however, the ALJ referenced "indications that the claimant's weight exacerbated her medical problems and her functional limitations." (Tr. 30.)  To accommodate those limitations, the ALJ included in the RFC certain options related to sitting, standing, walking, postural activities, and exposure to airborne irritants and environmental hazards.  (*Id.* 27-28, 30.)  Plaintiff has not alleged any other limitations the ALJ failed to consider that would accommodate Plaintiff's morbid obesity.

### C. The ALJ Properly Considered Plaintiff's Pain in the RFC Assessment

Plaintiff claims the ALJ failed to properly consider Plaintiff's pain in making the RFC assessment. (Dkt. No. 15 at 20.) Specifically, Plaintiff argues that the ALJ's decision does not reflect a review of the seven pain factors listed in SSR 96-7p, 1996 WL 374186 (July 2, 1996). (Dkt. No. 15 at 21.)

The Court finds the ALJ did not err in this regard because he specifically listed and considered the SSR 96-7p pain factors, and properly concluded Plaintiff lacked credibility when describing the intensity, persistence, and limiting effects of her pain where her descriptions were inconsistent with the RFC assessment. (Tr. 28- 33.)

For instance, the ALJ found that Plaintiff's daily living activities were inconsistent with her claims that she was disabled due to debilitating pain by citing her daily and weekly activities, hypochondriasis, and normal gait in 2009. (*Id.* 31.) The ALJ noted prescribed medications and treatments that Plaintiff failed to follow. (*Id.*) *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (noting that, when an ALJ assesses a claimant's credibility about her pain, the ALJ may consider "the extensiveness of the attempts (medical or nonmedical) to obtain relief, . . . [and] the nature of daily activities . . . .").

Moreover, the ALJ listed ten additional limitations in Plaintiff's RFC to accommodate Plaintiff's functional limitations and restrictions due to pain or other symptoms. (Tr. 27-28.) Plaintiff failed to present evidence showing she had functional limitations from pain not already accommodated in the RFC assessment.

### D. The ALJ did not err in Finding That Plaintiff had the RFC to Perform Less Than the Full Range of Sedentary Work and the Jobs Identified by the Vocational Expert

Plaintiff claims the ALJ erred in finding that Plaintiff had the RFC to perform less than the full range of sedentary work and the jobs identified by the vocational expert. (Dkt. No. 15 at 22.)

Initially, Plaintiff argues the ALJ failed to incorporate all of Plaintiff's impairments of scoliosis, fibromyalgia, and pleurisy, along with their respective limitations or restrictions, into the RFC assessment even though such incorporation "*may*" have changed Plaintiff's RFC.  (*Id.*) (emphasis added.)  As discussed above, the ALJ properly considered all of Plaintiff's medically determinable impairments in assessing her RFC.

Plaintiff also believes the ALJ erred because he failed to provide a "narrative discussion identifying evidence that supports each conclusion" related to step five.  (Dkt. No. 15 at 24.) However, such a narrative is not required at step five, but rather is required in the RFC assessment, and the ALJ provided such in his decision.  (Tr. 28-33.)

Plaintiff also argues the ALJ erred in relying on the vocational expert, who testified that a person with Plaintiff's RFC could perform work as an office addresser, food and beverage order clerk, and charge account clerk.  (Dkt. No. 15 at 23.)  Plaintiff argues she cannot work as an addresser because she lost her ability to write or type.  (*Id.* at 23-24.)

At the administrative hearing, Plaintiff testified "I had to take a desk job that . . . got too painful to do.  I couldn't type with my hands."  (Tr. 627.)  When asked specifically about her ability to use a keyboard, Plaintiff testified that she typed very slowly "like a third grader," and when writing she "used to write so pretty and [now] it's just like scribble."  (*Id.* 632.)  Plaintiff also cited both a finger x-ray, and a hand x-ray to support a loss of dexterity.  (Dkt. No. 13 at 24.)

However, the finger x-ray produced a "negative evaluation," and the hand x-ray merely showed "nonspecific findings of periarticular osteopenia" without "erosive changes," or "calcification."  (Tr. 542, 593.)  In short, no medical authority in the record indicated that periarticular osteopenia affected Plaintiff's ability to type or write.  *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (noting that, although the agency bears the burden of proof at

step five, that burden does not require the agency to assess exertional requirements "for which the medical record provides no evidence of an impairment or limitation.").

Plaintiff does not specifically challenge her ability to perform the other two jobs available in the national economy (food and beverage clerk, and charge account clerk), but does argue that the ALJ failed to provide "a statement of the incidence of such work in the region where the [Plaintiff] resides or in several regions of the country." (Dkt. No. 15 at 24.) *See* SSR 96-9p, 1996 WL 374185, at *5 (July 2, 1996) ("Where there is more than a slight impact on . . . ability to perform the full range of sedentary work . . . the adjudicator must . . . provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country.").

The ALJ did not make a statement about pertinent jobs available to Plaintiff in the specific region where she resided. However, he clearly stated Plaintiff could perform work in the "national economy" (Tr. 35), which by definition "means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). To this end, the ALJ reasonably relied on the vocational expert's testimony that 57,900 jobs existed in the national economy for someone with Plaintiff's RFC. (Tr. 34-35.) *See Rogers v. Astrue*, No. 08-4138, 2009 WL 368386, at *3 (10th Cir. Feb. 17, 2009) (unpublished) (finding 11,000 jobs in the national economy constituted substantial evidence to support a non-disability determination).

## VII. CONCLUSION

Having determined that the Commissioner's decision is supported by substantial evidence, and free from harmful legal error, the Court **AFFIRMS** the Commissioner's decision.

Dated this 14th day of August, 2013.    By the Court:

_____
Dustin B. Pead
United States Magistrate Judge